## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------
ELAINE WANG,                                           :
                                                       :
      Plaintiff,                                   : Civil Action No. _____
                                                       :
v.                                                     : **COMPLAINT FOR VIOLATIONS OF**
                                                       : **SECTIONS 14(a) AND 20(a) OF THE**
NOBLE MIDSTREAM PARTNERS LP,                           : **SECURITIES EXCHANGE ACT OF**
NOBLE MIDSTREAM GP LLC, COLIN E.                       : **1934**
PARFITT, ROBIN FIELDER, MARTIN                         :
SALINAS, JR., HALLIE A.                                : **JURY TRIAL DEMANDED**
VANDERHIDER, ANDREW VIENS,                             :
ANDREI F.B. BEHDJET, STEPHEN W.                        :
GREEN, and ALANA KNOWLES,                              :
                                                       :
      Defendants.                                  :
---------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Noble Midstream Partners LP ("Noble Midstream" or the "Company"), Noble Midstream GP LLC ("General Partner"), and the members of Noble Midstream's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company and General Partner, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Noble Midstream and Chevron Corporation and its affiliates ("Chevron").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on March 22, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to the Company's unitholders.  The Registration Statement recommends that the Company's unitholders vote in favor of a proposed transaction whereby Cadmium Merger Sub LLC ("Merger Sub"), a Delaware limited liability company and a wholly-owned subsidiary of Cadmium Holdings, Inc. ("Holdings"), a Delaware corporation and a wholly-owned subsidiary of Chevron, will merge with and into Noble Midstream, with Noble Midstream surviving as an indirect, wholly-owned subsidiary of Chevron (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Noble Midstream unitholder will receive 0.1393 shares of Chevron stock per unit of Noble Midstream common units held (the "Merger Consideration").

3.      As discussed below, Defendants have asked Noble Midstream's unitholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the board of the General Partner's Conflict Committee's (defined below) financial advisor, Janney Montgomery Scott LLC ("Janney"), in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's unitholders prior to the forthcoming unitholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Noble Midstream's unitholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Noble Midstream was formed in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Noble Midstream units and has held such units since prior to the wrongs complained of herein.

10. Individual Defendant Colin E. Parfitt joined the Board in October 2020 as its Chairman and is also the Vice President of Chevron's Midstream operations.

11. Individual Defendant Robin Fielder has served as a member of the Board since August 2020 and is the Company's President and Chief Executive Officer.

12. Individual Defendant Martin Salinas, Jr. ("Salinas") has served as a member of the Board since October 2016.

13. Individual Defendant Hallie A. Vanderhider ("Vanderhider") has served as a member of the Board since September 2016.

14. Individual Defendant Andrew Viens ("Viens") has served as a member of the Board since June 2017.

15. Individual Defendant Andrei F.B. Behjet has served as a member of the Board since October 2020 and is also the General Counsel of Chevron Downstream & Chemicals and Midstream.

16. Individual Defendant Stephen W. Green has served as a member of the Board since October 2020 and is also the President of Chevron North America Exploration and Production.

17. Individual Defendant Alana Knowles has served as a member of the Board since October 2020 and is also the Vice President of Chevron Downstream & Chemicals and Midstream.

18. Defendant Noble Midstream a Delaware limited partnership and maintains its principal offices at 1001 Noble Energy Way, Houston, Texas 77070. The Company's common units trade on the NASDAQ Stock Exchange under the symbol "NBLX."

19. Defendant General Partner is a general partner of Noble Midstream. Its board of directors and executive officers manage Noble Midstream. The General Partner is indirectly wholly-owned by Chevron. The General Partner's principal executive offices are located at 1001 Noble Energy Way, Houston, Texas 77070.

20. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

21. Defendants Salinas, Viens, and Vanderhider are the members of the Conflicts Committee.

22. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.     The Proposed Transaction**

23. Noble Midstream owns, operates, develops, and acquires midstream infrastructure assets in the United States.  It operates through three segments: Gathering Systems, Fresh Water Delivery, and Investments in Midstream Entities.  The Company provides crude oil, natural gas, and water-related midstream services.  It operates in the Denver-Julesburg Basin in Colorado and the Delaware Basin in Texas.  The Company was founded in 2014 and is based in Houston, Texas.  Noble Midstream is a subsidiary of Noble Energy, Inc.

24. On March 5, 2021, the Company and Chevron jointly announced the Proposed Transaction:

> SAN RAMON, Calif.--(BUSINESS WIRE)--Chevron Corporation (NYSE: CVX) ("**Chevron**") and Noble Midstream Partners, LP (NASDAQ: NBLX) ("**Noble Midstream**") announced today that they have entered into a definitive agreement for Chevron to acquire all (33.925 million) of the publicly held common units representing the limited partner interests in Noble Midstream, not already owned by Chevron and its affiliates (the "**Common Units**"), in an all-stock transaction whereby each outstanding unitholder of Noble Midstream would receive 0.1393 of a share of common stock of Chevron in exchange for each Common Unit owned.
>
> "We believe this buy-in transaction is the best solution for all stakeholders, enabling us to simplify the governance structure and capture value in support of our leading positions in the DJ and Permian basins," said Colin Parfitt, Vice President of Chevron Midstream and Chairman of the Board of Directors (the "**Board**") of the general partner of Noble Midstream Partners LP.

> The Conflicts Committee of the Board, comprised entirely of independent directors, after consultation with its independent legal and financial advisors, unanimously approved the merger. Subsequently, the merger was approved by the Board.
>
> The transaction is expected to close in the second quarter of 2021, subject to customary approvals. A subsidiary of Chevron, as the holder of a majority of the outstanding Common Units, has voted its units to approve the transaction.
>
> **Advisors**
>
> Citi is acting as financial advisor and Latham & Watkins LLP is acting as legal advisor to Chevron. Janney Montgomery Scott is acting as financial advisor and Baker Botts L.L.P. is acting as legal advisor to the Conflicts Committee of the Board.

\* \* \*

25. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Noble Midstream's unitholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming unitholder vote.

B.  **The Materially Incomplete and Misleading Registration Statement**

26. On March 22, 2021, Noble Midstream and Chevron jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's unitholders and solicits the unitholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is

necessary for the Company's unitholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27. The Registration Statement fails to provide material information concerning financial projections by Chevron management and the General Partner and relied upon by Janney in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, the management prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Janney with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. First, the Registration Statement fails to disclose prospective financial information for Chevron. This information is material as Noble Midstream unitholders will receive Chevron shares as consideration.

29. For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: Adjusted EBITDA and Distributable Free Cash Flows but fails to provide line items used to

calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that unitholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

32. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

33. The Registration Statement also fails to disclose net income projections for both the Company, Chevron, and the pro forma company.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

34. With respect to Janney's *Premia Analysis*, the Registration Statement fails to disclose: (i) the transaction values for the transactions observed by Janney in the analysis; and (ii) the premia for those transactions.

35. With respect to Janney's *Public Comparables Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies and partnerships observed by Janney in the analysis, including: (i) multiple of enterprise value to estimated adjusted EBITDA; (ii) current yield; (iii) discounted cash flow coverage for FYE 2021; and (iv) multiple of net debt to adjusted EBITDA for FYE 2021.

36. With respect to Janney's *Precedent Transactions Analysis*, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for the transactions observed by Janney in the analysis; and (ii) the inputs and basis for selecting the multiple reference range for enterprise value to NTM EBITDA of 7.50x-10.00x.

37. With respect to Janney's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the Company's unlevered free cash flows that the Company is expected to generate during the second half of 2021 and years ending December 31, 2022 through 2025; (ii) an implied terminal enterprise value of Noble Midstream; (iii) the inputs and assumptions underlying the use of the terminal EBITDA multiples ranging from 7.5x to 9.0x; (iv) Company's net det; (v) the Company's book value of preferred equity of a subsidiary of NBLX; and (vi) the implied equity value for NBLX as calculated by Janney.

38.     With respect to Janney's engagement, the Registration Statement fails to disclose whether Janney had any financial services or investment banking services with Chevron or the General Partner.

39.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special unitholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Registration Statement with the intention of soliciting unitholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial

10

projections that were prepared by the Company and relied upon by the Board in recommending the Company's unitholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Noble Midstream within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Noble Midstream, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Noble Midstream, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Noble Midstream, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

50. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 25, 2021

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**MELWANI & CHAN LLP**
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com